AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br> )<br>Information associated with the Instagram User IDs )<br>"mira_squad2" and "Greeneyez8000" )<br> ) | Case No.   21-4333mb |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachement A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachement B.

**YOU ARE COMMANDED** to execute this warrant on or before _November 12, 2021_   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ any Duty Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____

*Camille D. Bibles*   Digitally signed by Camille D. Bibles
Date: 2021.10.29 14:21:07 -07'00'

*Judge's signature*

City and state:   Flagstaff, Arizona   Camille D. Bibles U.S. Magistrate Judge

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br><br>21-4333mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF THE ITEMS TO BE SEARCHED

Information associated with the Instagram User IDs "**mira_squad2**" and "**Greeneyez8000**", (hereinafter and in Attachment B, "**SUBJECT ACCOUNTS**"), which is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., located at 1601 Willow Road, Menlo Park, CA 94025 (hereinafter and in Attachment B, "PROVIDER").

## ATTACHMENT B

Pursuant to 18 U.S.C. § 2703, the PROVIDER, as described in Attachment A, is hereby ordered as follows:

## I.      SEARCH PROCEDURE

1.      The search warrant will be presented to personnel of the PROVIDER, who will be directed to isolate those accounts and files described in Section II below regardless of whether such information is stored, held or maintained inside or outside of the United States;

2.      In order to minimize any disruption of computer service to innocent third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

3.      The PROVIDER's employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant; and

4.      Law enforcement personnel will thereafter review all information and records received from the PROVIDER's employees to determine the information to be seized by law enforcement personnel specified in Section III.

## II.     FILES AND ACCOUNTS TO BE DISCLOSED BY THE PROVIDER'S EMPLOYEES

1.      For the **SUBJECT ACCOUNTS** listed in Attachment A for the time period from the date the **SUBJECT ACCOUNTS** were created to the date the PROVIDER collects the data in response to this order, the PROVIDER shall disclose the following information, and the disclosure shall include all information even if deleted yet still available to the PROVIDER, and all information preserved pursuant to a request under 18 U.S.C. § 2703(f):

        a.      The contents of all messages and data stored in, or on behalf of, the **SUBJECT ACCOUNTS**;

        b.      All communications or other messages sent or received by the **SUBJECT ACCOUNTS**;

c.      All existing printouts from original storage of all of the messages described above;

d.      All messaging and/or transactional logs, including date and time of messages and identification numbers associated with the device sending and receiving messages;

e.      All voice mail, audio files, video files, text, text files, images, multimedia, chats, instant messages ("IMs"), and any and all other communications stored and presently contained in, or on behalf of, the **SUBJECT ACCOUNTS**;

f.      All photographs, images and videos in the user gallery for the **SUBJECT ACCOUNTS**;

g.      All records or other information regarding the identification of the **SUBJECT ACCOUNTS**, to include full name; birth date; gender; contact e-mail addresses; physical addresses (including city, state, and zip code); telephone numbers; screen names; websites; other personal identifiers; the length of service; account status; alternative e-mail addresses, telephone numbers, or other identifying information provided during registration; other associated online accounts; methods of connecting; log files; and means and source of payment (including any credit or bank account number);

h.      All past and current usernames associated with the **SUBJECT ACCOUNTS**;

i.      The dates and times at which the **SUBJECT ACCOUNTS** were created, and the Internet Protocol (IP) address at the time of sign-up;

j.      All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the **SUBJECT ACCOUNTS**, as well as any other log file information;

k.      All information regarding the particular device or devices used to login to or access the **SUBJECT ACCOUNTS**, including all device identifier information or cookie information, including the date and time of those accesses;

l.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

m.     All user content created, uploaded, or shared by the **SUBJECT ACCOUNTS**, including any comments made by the **SUBJECT ACCOUNTS** on photographs or other content;

n.     All location data associated with the **SUBJECT ACCOUNTS**, including geotags;

o.     All data and information that has been deleted by the user;

p.     A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any friends of the user;

q.     A list of all users that the **SUBJECT ACCOUNTS** have "unfollowed" or blocked;

r.     All privacy and account settings;

s.     All records of Instagram searches performed by the **SUBJECT ACCOUNTS**, including all past searches saved by the **SUBJECT ACCOUNTS**;

t.     All information about connections between the **SUBJECT ACCOUNTS** and third-party websites and applications;

u.     All records indicating the services available to the subscriber of the **SUBJECT ACCOUNTS**;

v.     The services the **SUBJECT ACCOUNTS** utilized and all records generated by those services;

w.     All records pertaining to communications between Facebook, Inc. and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account; and

x.     For all information responsive to this warrant, regardless of whether such information is stored, held or maintained inside or outside of the United States, the physical location or locations where the information is stored.

2.     The PROVIDER is hereby ordered to disclose the above information to the Government within 14 DAYS of the issuance of this warrant.

### III.    INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

1.      All information described above in Section II that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1470, Transfer of Obscene Material to Minors, 18 U.S.C. § 2422, Coercion and Enticement, and 18 U.S.C. § 2251(a), Sexual Exploitation of Children:

     a.      All communications, attachments, and related files that identify the account user, individuals, or correspondents involved with the crimes listed above;

     b.      All communications, attachments, and related computer files that evidences or identifies the means of payment or financing of the crimes listed above;

     c.      All "address books" or other lists of correspondents;

     d.      All saved "chat" transcripts that identify a sexual interest in minors and/or violations of the crimes listed above;

     e.      Any and all records, documents, visual depictions, and materials pertaining to child pornography, child erotica, an interest in such materials, or pertaining to a sexual interest in children, or sexual activity involving children;

     f.      Any and all information, notes, software, documents, records, or correspondence, in any form and medium pertaining to any minor who is, or appears to be, the subject of any visual depiction of child pornography or sexual activity with other minors or adults, or of sexual interest, or that may be helpful in identifying any such minors;

     g.      Records relating to who created, used, or communicated with the **SUBJECT ACCOUNTS**, including records about their identities and whereabouts;

     h.      Records and information concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography;

     i.      Records and information related to membership in online groups, clubs, or services that provide or make accessible child pornography to members, and/or that advertise, promote, discuss or otherwise involve child pornography;

     j.      Records and information related to the known associates of the users of the **SUBJECT ACCOUNTS**, including biographical information, addresses, e-mail

addresses, user names, social security numbers, or other pertinent identifying information;

k.      Records and information related to any payment information, account information, and other financial records.

## IV.      ORDER OF NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE

1.      Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), the Court orders the PROVIDER not to disclose the existence of this search warrant to any person, including the subscriber, other than its personnel essential for compliance with the execution of this warrant.

2.      The Court further orders the PROVIDER to continue to maintain the **SUBJECT ACCOUNTS** in an open and active status so as not to disrupt the ongoing investigation.

## V.      PROVIDER PROCEDURES

1.      The PROVIDER shall deliver the information set forth above within 14 DAYS of the service of this warrant and the PROVIDER shall send the information via United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

>       Special Agent Sean McCarthy
>       Homeland Security Investigations
>       1585 South Plaza Way
>       Ste 130
>       Flagstaff, AZ 86001

2.      Alternatively, the PROVIDER may deliver the information set forth above within 14 DAYS of the service of this warrant via e-mail to:  Sean.mccarthy@ice.dhs.gov.

3.      Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.  21-4333mb |
| *or identify the person by name and address)* | ) | |
| Information associated with the Instagram User IDs | ) | |
| "mira_squad2" and "Greeneyez8000" | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

As described in Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252 | Certain activities relating to material involving the sexual exploitation of minors |
| 18 U.S.C. § 2422 | Coercion and Enticement |
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children |

The application is based on these facts:

As set forth in the attached Affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: Brett A. Day, AUSA

*BDay*

SEAN P MCCARTHY  Digitally signed by SEAN P MCCARTHY
Date: 2021.10.29 09:19:39 -07'00'

*Applicant's signature*

Special Agent Sean McCarthy, HSI

*Printed name and title*

Sworn to and signed electronically.

Camille D. Bibles  Digitally signed by Camille D. Bibles
Date: 2021.10.29 14:21:43 -07'00'

Date: _____

*Judge's signature*

City and state:  Flagstaff, Arizona

Camille D. Bibles, U.S. Magistrate Judge

*Printed name and title*

## <u>ATTACHMENT A</u>

## <u>DESCRIPTION OF THE ITEMS TO BE SEARCHED</u>

Information associated with the Instagram User IDs "**mira_squad2**" and "**Greeneyez8000**",  (hereinafter and in Attachment B, "**SUBJECT ACCOUNTS**"), which is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., located at 1601 Willow Road, Menlo Park, CA 94025 (hereinafter and in Attachment B, "PROVIDER").

## ATTACHMENT B

Pursuant to 18 U.S.C. § 2703, the PROVIDER, as described in Attachment A, is hereby ordered as follows:

## I.    SEARCH PROCEDURE

1.      The search warrant will be presented to personnel of the PROVIDER, who will be directed to isolate those accounts and files described in Section II below regardless of whether such information is stored, held or maintained inside or outside of the United States;

2.      In order to minimize any disruption of computer service to innocent third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

3.      The PROVIDER's employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant; and

4.      Law enforcement personnel will thereafter review all information and records received from the PROVIDER's employees to determine the information to be seized by law enforcement personnel specified in Section III.

## II.    FILES AND ACCOUNTS TO BE DISCLOSED BY THE PROVIDER'S EMPLOYEES

1.      For the **SUBJECT ACCOUNTS** listed in Attachment A for the time period from the date the **SUBJECT ACCOUNTS** were created to the date the PROVIDER collects the data in response to this order, the PROVIDER shall disclose the following information, and the disclosure shall include all information even if deleted yet still available to the PROVIDER, and all information preserved pursuant to a request under 18 U.S.C. § 2703(f):

        a.      The contents of all messages and data stored in, or on behalf of, the **SUBJECT ACCOUNTS**;

        b.      All communications or other messages sent or received by the **SUBJECT ACCOUNTS**;

c.      All existing printouts from original storage of all of the messages described above;

d.      All messaging and/or transactional logs, including date and time of messages and identification numbers associated with the device sending and receiving messages;

e.      All voice mail, audio files, video files, text, text files, images, multimedia, chats, instant messages ("IMs"), and any and all other communications stored and presently contained in, or on behalf of, the **SUBJECT ACCOUNTS**;

f.      All photographs, images and videos in the user gallery for the **SUBJECT ACCOUNTS**;

g.      All records or other information regarding the identification of the **SUBJECT ACCOUNTS**, to include full name; birth date; gender; contact e-mail addresses; physical addresses (including city, state, and zip code); telephone numbers; screen names; websites; other personal identifiers; the length of service; account status; alternative e-mail addresses, telephone numbers, or other identifying information provided during registration; other associated online accounts; methods of connecting; log files; and means and source of payment (including any credit or bank account number);

h.      All past and current usernames associated with the **SUBJECT ACCOUNTS**;

i.      The dates and times at which the **SUBJECT ACCOUNTS** were created, and the Internet Protocol (IP) address at the time of sign-up;

j.      All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the **SUBJECT ACCOUNTS**, as well as any other log file information;

k.      All information regarding the particular device or devices used to login to or access the **SUBJECT ACCOUNTS**, including all device identifier information or cookie information, including the date and time of those accesses;

l.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

m.     All user content created, uploaded, or shared by the **SUBJECT ACCOUNTS**, including any comments made by the **SUBJECT ACCOUNTS** on photographs or other content;

n.     All location data associated with the **SUBJECT ACCOUNTS**, including geotags;

o.     All data and information that has been deleted by the user;

p.     A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any friends of the user;

q.     A list of all users that the **SUBJECT ACCOUNTS** have "unfollowed" or blocked;

r.     All privacy and account settings;

s.     All records of Instagram searches performed by the **SUBJECT ACCOUNTS**, including all past searches saved by the **SUBJECT ACCOUNTS**;

t.     All information about connections between the **SUBJECT ACCOUNTS** and third-party websites and applications;

u.     All records indicating the services available to the subscriber of the **SUBJECT ACCOUNTS**;

v.     The services the **SUBJECT ACCOUNTS** utilized and all records generated by those services;

w.     All records pertaining to communications between Facebook, Inc. and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account; and

x.     For all information responsive to this warrant, regardless of whether such information is stored, held or maintained inside or outside of the United States, the physical location or locations where the information is stored.

2.     The PROVIDER is hereby ordered to disclose the above information to the Government within 14 DAYS of the issuance of this warrant.

### III.    INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

1.      All information described above in Section II that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1470, Transfer of Obscene Material to Minors, 18 U.S.C. § 2422, Coercion and Enticement, and 18 U.S.C. § 2251(a), Sexual Exploitation of Children:

a.      All communications, attachments, and related files that identify the account user, individuals, or correspondents involved with the crimes listed above;

b.      All communications, attachments, and related computer files that evidences or identifies the means of payment or financing of the crimes listed above;

c.      All "address books" or other lists of correspondents;

d.      All saved "chat" transcripts that identify a sexual interest in minors and/or violations of the crimes listed above;

e.      Any and all records, documents, visual depictions, and materials pertaining to child pornography, child erotica, an interest in such materials, or pertaining to a sexual interest in children, or sexual activity involving children;

f.      Any and all information, notes, software, documents, records, or correspondence, in any form and medium pertaining to any minor who is, or appears to be, the subject of any visual depiction of child pornography or sexual activity with other minors or adults, or of sexual interest, or that may be helpful in identifying any such minors;

g.      Records relating to who created, used, or communicated with the **SUBJECT ACCOUNTS**, including records about their identities and whereabouts;

h.      Records and information concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography;

i.      Records and information related to membership in online groups, clubs, or services that provide or make accessible child pornography to members, and/or that advertise, promote, discuss or otherwise involve child pornography;

j.      Records and information related to the known associates of the users of the **SUBJECT ACCOUNTS**, including biographical information, addresses, e-mail

addresses, user names, social security numbers, or other pertinent identifying information;

k.      Records and information related to any payment information, account information, and other financial records.

## IV.      ORDER OF NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE

1.      Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), the Court orders the PROVIDER not to disclose the existence of this search warrant to any person, including the subscriber, other than its personnel essential for compliance with the execution of this warrant.

2.      The Court further orders the PROVIDER to continue to maintain the **SUBJECT ACCOUNTS** in an open and active status so as not to disrupt the ongoing investigation.

## V.      PROVIDER PROCEDURES

1.      The PROVIDER shall deliver the information set forth above within 14 DAYS of the service of this warrant and the PROVIDER shall send the information via United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

      Special Agent Sean McCarthy
      Homeland Security Investigations
      1585 South Plaza Way
      Ste 130
      Flagstaff, AZ 86001

2.      Alternatively, the PROVIDER may deliver the information set forth above within 14 DAYS of the service of this warrant via e-mail to:  Sean.mccarthy@ice.dhs.gov.

3.      Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Sean McCarthy, having been first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

1.      Your affiant is a Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), currently assigned to the Flagstaff, Arizona office. Your affiant has an Associate in Science degree from Tallahassee Community College. Your affiant started his law enforcement career in 2014.  Prior to law enforcement your affiant served in the U.S. Army from 2004 to 2010 as an Infantryman and Forward Observer. Your affiant served in Operation Iraqi Freedom from 2006 to 2007. In 2014 your affiant joined U.S. Customs and Border Protection as an Officer with the Office of Field Operations in Blaine, Washington. Your affiant is a law enforcement officer of the United States and is empowered by law to conduct criminal investigations, make arrests, and serve search and arrest warrants.  As a Special Agent with HSI, your affiant investigates criminal violations of United States law, including import and export violations, controlled substances law violations, crimes relating to the sexual exploitation of children and money laundering violations. Your affiant is also a cross designated Peace Officer in the state of Arizona by Navajo County Sheriff's Office.

2.      This Affidavit is based upon my personal knowledge and involvement in the investigation; information provided by other sworn law enforcement officers and other personnel specially trained in the seizure and analysis of computers, electronic mobile devices, and electronic storage devices; and my training and experience.  Because this Affidavit is being submitted for the limited purpose of securing a search warrant, it does not include all the facts that I have learned during the course of my investigation.  I have included only those facts and circumstances that I believe are sufficient to establish probable cause for the issuance of the requested search warrant.

3.      This Affidavit is made in support of an application for a search warrant for information associated with the following Instagram accounts, which are stored at premises

owned, maintained, controlled, or operated by Facebook, Inc., hereinafter referred to as the "Communication Account Provider," more fully described in Attachment A:

    a.  Instagram account Greeneyez8000 (hereinafter "**SUBJECT INSTAGRAM ACCOUNT 1**")

    b.  Instagram account mira_squad2 (hereinafter "**SUBJECT INSTAGRAM ACCOUNT 2"**)

    4.    This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require the Communication Account Provider specified in Attachment A to disclose to the Government records and other information in its possession pertaining to the subscribers or customers associated with **THE SUBJECT INSTAGRAM ACCOUNTS**, described in Attachment A, including the contents of communications. As to the accounts, the evidence and information to be searched is described in the following paragraphs and in Attachment A and Attachment B, and there is probable cause to believe that **THE SUBJECT INSTAGRAM ACCOUNTS** constitute and/or contain evidence, fruits, contraband, and instrumentalities of 18 U.S.C. § 1470, Transfer of Obscene Material to Minors, 18 U.S.C. § 2422, Coercion and Enticement, and 18 U.S.C. § 2251(a), Sexual Exploitation of Children.

    5.    Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2422(b) Enticement of a Minor, 18 U.S.C. § 2251(a) Production of Child Pornography, and 18 U.S.C. § 2252(a)(4)(B) Possession of Child Pornography.

## **DEFINITIONS**

    6.    The following definitions apply to this Affidavit, Attachment A, and Attachment B (collectively referred to as "warrant").

7.     "Child Pornography" is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.  See 18 U.S.C. § 2256(8).

8.     "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

9.     "Minor" means any person under the age of eighteen years.  See 18 U.S.C. § 2256(1).

10.     "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  See 18 U.S.C. § 2256(2).

11.     "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

12.     "Internet Protocol address" (IP address) refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  An IP address is a series of numbers separated by periods; an example of an IP address is 192.168.10.102.  Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address.  A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers.  Because

every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access an account, such as an email or social media account.

13.     "Internet Service Providers" (ISPs) are commercial organizations that provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage and co-location of computers and other communications equipment. ISPs can offer various means to access the Internet, including telephone based dial-up, broadband-based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite-based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name, such as a user name or screen name, an email address, and an email mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

14.     "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), email communications, information concerning content uploaded and/or stored on or via the ISP's servers and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

15.     In this Affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical

object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, cellular telephones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

## BACKGROUND REGARDING THE INTERNET AND INSTAGRAM

16.     As part of my training and experience, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions, including satellite.  Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.

17.     Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e- mail").

18.     An individual who wants to use Internet email must first obtain an account with a computer that is linked to the Internet, for example, through a university, an employer, or a commercial service, which is called an "Internet Service Provider" or "ISP." Once the individual has accessed the Internet, that individual can use an email account provided by their ISP or they can use the Internet to connect to web-based email services (such as those provided by Google Gmail, Yahoo! Mail, and Microsoft Hotmail) to send and receive email.  Web-based email services provide email accounts that may be accessed from any computer that has access to the Internet.  In addition, the individual can access websites using web browsers (computer programs that permit users to navigate through pages of information that are stored on remote computers, such as Internet Explorer and

Google Chrome) to view or download content or to make purchases.  The Internet may also be used to access e-groups (websites that require users to subscribe, and permit subscribers to post messages, chat electronically, post and transfer files and share information), newsgroups (that permit posting of email messages regarding specific topics), and video conferencing.

## INSTAGRAM

19.    In my training and experience, I have learned that Facebook, Inc. is headquartered in Menlo Park, California, and owns and operates a free access social networking website named "Instagram" that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information.  Users can access Instagram through the Instagram website or by using the Instagram application ("app") that allows users to access the service through a mobile device.

20.    Instagram permits users to post photos to their profiles and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter.  When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag "#vw" so people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos.  In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.

21.    Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password.  This information is collected and maintained by Facebook, Inc.

22.    Facebook, Inc. asks users to provide basic identity and contact information upon registration of an Instagram account and also allows users to provide additional

identity information for their user profile.  This information may include the user's full name, email addresses, and telephone numbers, as well as potentially other personal information provided directly by the user to Instagram.  Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Facebook, Inc. collects and maintains this information.

23.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public.  Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles.  Facebook, Inc. collects and maintains this information.

24.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user.  Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

25.     Instagram allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials.  Facebook, Inc. collects and maintains user content that users post to Instagram or share through Instagram. Instagram users may send photos and videos to select individuals or groups via Instagram Direct.  Information sent via Instagram Direct does not appear in a user's feed, search history or profile.  Users on Instagram may also search Instagram for other users or particular types of photos or other content.

26.     For each user, Facebook, Inc. also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app.  Among the log file information that Facebook Inc.'s servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

27.     Facebook, Inc. also collects and maintains "cookies," which are small text

files containing a string of numbers that are placed on a user's computer or mobile device and that allows Facebook, Inc. to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

28.    Facebook, Inc. also collects information on the particular devices used to access Instagram. In particular, Facebook, Inc. may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

29.    Facebook, Inc. also collects other data associated with user content. For example, Facebook, Inc. collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo, and which may include latitude and longitude information, comments on photos, and other information.

30.    Facebook, Inc. also may communicate with the user of an Instagram account, by email or otherwise. Facebook, Inc. collects and maintains copies of communications between Facebook, Inc. and the user.

31.    On July 6, 2021, and July 21, 2021, agents submitted preservation requests via Facebook's online law enforcement portal for **THE SUBJECT INSTAGRAM ACCOUNTS**. Following the submission of the preservation requests, Facebook, Inc. advised they will comply with the requests to preserve this information.

32.    As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Facebook, Inc., can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and

captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Facebook, Inc. logs the IP addresses from which users access their Instagram accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Facebook, Inc. builds geo-location into some of its Instagram services. Geo-location allows, for example, users to "tag" their location in posts and allows Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

33.    Based on the information above, the computers of Facebook, Inc. are likely to contain all the material described above with respect to **THE SUBJECT INSTAGRAM ACCOUNTS**, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## SUMMARY

34.     Investigation has revealed that 39-year-old Phillip Bernard McKnight has engaged in sexually explicit conversations with minors through several online platforms including Instagram.  In many of the conversations, McKnight requests, and receives, sexually explicit photos of the minor victims. McKnight is known to use multiple online personas, some female, in communicating with the minor victims.  McKnight is known to utilize the Instagram username Greeneyez8000 (**SUBJECT INSTAGRAM ACCOUNT 1**) and minor Victim 2 is known to utilize the Instagram username mira_squad2 (**SUBJECT INSTAGRAM ACCOUNT 2).**

35.     On July 7, 2021, law enforcement interviewed McKnight.  During the interview, McKnight admitted to engaging in sexually explicit conversations, and receiving sexually explicit images and videos from Victims 1, 2 and 3 as detailed below.  McKnight further admitted to utilizing multiple online platforms, including Instagram, and using multiple personas to engage in these activities.

## PROBABLE CAUSE

36.     On or about May 12, 2021, TD, the mother of a minor child, whose initials are "LD" (Victim 1), advised law enforcement that she had observed text message/direct message communication between LD and several individuals whom TD believed were engaging in sexually explicit conversations and exchanging pornographic images. TD observed the messages over several online platforms, including Gmail, Instagram, and iMessage. TD provided the following information to law enforcement about one of the individuals with whom LD communicated with:

Nickname: "Grandpa" or "Gpa"

Google Username: "pmcknight"

Email Address: caliswagg81@gmail.com

Phone Number: (619) 856-3632 (Phillip Bernard McKnight's cellphone)

Instagram Username: Greeneyez8000

37. On or about May 13, 2021, TD turned LD's cell phone over to South Florida law enforcement for a data extraction.

38. On or about May 20, 2021, law enforcement received the forensic report of LD's cellphone. The report listed two contacts with the phone number assigned to McKnight's cellphone: "Dpwh" and "Tasha." The conversation between LD and "Tasha" revealed approximately 2,000 messages exchanged in the iMessage application from in or around November 2020.

39. The following conversation occurred on or about February 26, 2021:

| SENDER | RECIPIENT | MESSAGE |
| --- | --- | --- |
| "Tasha" | LD | I said do a close up cuz I wanna see the pussy lips and u better not shave either. |
| LD | "Tasha" | *A picture of LD's genitals* |
| "Tasha" | LD | Damn bitch u wet af…U definitely a virgin |

40. On or about March 7, 2021, "Dominique/Tasha" made multiple requests for LD to send pictures of her genitals. The following exchange ensued: "Dominique/Tasha" ultimately sent a message saying, "Go in the bathroom take pics of your pussy… U better not shave either… Go in there now".  At 11:23pm, LD sent a zoomed in picture of her genitals. "Dominique/Tasha" replied, "Do a video of you stickin your fingers in until u cum."

41. While reviewing the contents of LD's Google account, law enforcement noted that LD received email alerts whenever she received messages from McKnight's cellphone. It appeared that LD was using a Google voice number to communicate with McKnight, whose nickname in this chat was "Dpwh".

| SENDER | RECIPIENT | MESSAGE |
|---|---|---|
| caliswagg81 | LD | I still wanna see the pussy. All different angles of the pussy too |
| caliswagg81 | LD | Wb the pussy pics |
| caliswagg81 | LD | I love the titties vid |
| caliswagg81 | LD | I NEED PUSSY |
| caliswagg81 | LD | U BETTER OPEN YOUR LEGS WIDE OPEN FOR ME, IM NOT ASKIN U IM TELLIN U |

42.    On or about May 29, 2021, LD's father advised that he logged into his laptop and noticed that LD's Google account was logged in. He looked through the emails and found correspondence between caliswagg81@gmail.com and his daughter. LD's father also advised that he observed sexually explicit images of LD that were sent from LD to the caliswagg81@gmail.com account.

**Investigative Measures**

43. In response to a state subpoena, Google provided subscriber information and IP login data for the caliswagg81@gmail.com account. These records showed that the account was still active, and that the user accessed the account regularly. The subscriber's name attached to the account is "P. McKnight."  The Google records also show that the user of the account listed McKnight's cellphone as the Recovery SMS Number and the Sign-in Phone Number.

44. In response to a state subpoena, Instagram also provided the requested subscriber information. The Instagram account belonging to "Grandpa" (Greeneyez8000 "**SUBJECT INSTAGRAM ACCOUNT 1**") listed a first name of greeneyez8000 and listed caliswagg81@gmail.com as an associated email.

45. Law enforcement compared the IP logs of the account belonging to "Grandpa" to the account belonging to "Dominique" and found that both accounts had a pattern of accessing the same IP addresses on the same dates at approximately the same times. Law enforcement also compared the IP logs provided by Google to the IP logs provided by Instagram and found a similar pattern where the Google account was accessed on the same dates and at nearly the same times as when the two aforementioned Instagram accounts were accessed.  Also, most of the IPs that were used to access the accounts are mobile IPs that are serviced by various cellular telephone companies. Based on your affiant's training and experience, as well as the data analysis, it is believed that a single person is using McKnight's cellphone to access the caliswagg81@gmail.com and the "Grandpa" and "Dominique" Instagram accounts.

46. Law enforcement used online data mining websites to query the phone number assigned to McKnight's cellphone. The results identified "Phillip Bernard McKnight" as a user.  The area code for the phone number belongs to an area within the State of California, but the subscriber location belongs to an area within the State of Arizona. These queries also revealed that McKnight had previously resided in California.

47. The California Highway Patrol subsequently provided driver license information associated with the "Phillip Bernard McKnight" name. The California Highway Patrol confirmed that a California driver license exists for a "Phillip Bernard McKnight Jr." (DOB: XX/XX/1981).[1]  The driver's license photo of McKnight matched the profile photo associated with the Greeneyez8000 Instagram account and the contact photo set for the caliswagg81@gmail.com account.

48. Law enforcement executed a search warrant of McKnight's Google account and found sexually explicit videos of LD, as well as "selfie" type photographs of McKnight in the records.

---

[1] In your affiant's training and experience, it is common for individuals to use the last two digits of their birth year in their personal email address. This is relevant because the last two digits of McKnight's birth year – "81" – appear in the caliswagg81@gmail.com address.

49. Law enforcement executed a search warrant of the Apple account linked to McKnight's phone number and email address. In its response, Apple disclosed subscriber/user information that listed McKnight as the subscriber/user. The records also contained some of the same communications between McKnight and LD (Victim 1) as mentioned above.  There were also several sexually explicit videos of LD contained in the records.  There were also "selfie" type photographs of McKnight.

50. Also discovered in McKnight's Apple account were numerous sexually explicit videos that were sent to McKnight depicting a black female approximately 14–16 years old, subsequently identified as L.G. (Victim 2).  In some of the videos, Victim 2 is naked and touching her naked vagina with her hands and inserting her fingers into her vagina. In at least one of the videos, the Instagram username name "mira_squad2" (**SUBJECT INSTAGRAM ACCOUNT 2**) is clearly displayed on Victim 2's screen. Also, in the Apple records are screen recordings of video calls between Victim 2 and McKnight that appeared to have been recorded by McKnight.  In these screen recordings, Victim 2 is naked and touching herself and McKnight can be seen on the screen watching Victim 2.

51. Also discovered in the Apple records, are sexually explicit images of a black female approximately 7-8 years old, subsequently identified as M.J. (Victim 3).  The images appear to have been recorded/taken by Victim 2.  In one video, Victim 3 is sitting in a bathtub naked and in another video Victim 3 is standing on the side of a bathtub while naked. In another video, Victim 3 is clothed and is sitting on a sink while Victim 2, who is seen in the mirror making the recording, appears to be trying to record Victim 3's vaginal area.  There are also images showing what appears to be Victim 2 recording herself touching Victim 3's naked vagina.

52. On July 6, 2021, the Honorable Camille D. Bibles, United States Magistrate Judge in the District of Arizona, signed a search warrant authorizing the search and seizure of evidence from computers, electronic media and storage devices from McKnight's residence.  Law enforcement executed this search on July 7, 2021.  As a result of the search

warrant, several electronic devices including two iPhones were seized.  A preliminary forensic examination was conducted of the iPhones which revealed chat messages and sexually explicit videos of Victim 1 as well as sexually explicit videos of Victim 2 contained in the phones.

53. On July 7, 2021, McKnight was interviewed by law enforcement and stated in sum and part the following: he had sexually explicit conversations with Victim 1 and received sexually explicit videos of Victim 1 via email and messaging platforms. MCKNIGHT also admitted that he used the persona of a 14-year-old girl named "Dominique" to communicate with Victim 1.  During the interview, McKnight identified screenshots from sexually explicit videos that Victim 1 sent to him.

54. McKnight also admitted to having sexually explicit conversations with Victim 2, who he knew was 14 years old, and received sexually explicit videos of Victim 2 via messaging platforms including Snapchat, Instagram and FaceTime.  During the interview, McKnight identified screenshots from sexually explicit videos that Victim 2 sent to him.  McKnight also identified screenshots from sexually explicit videos that Victim 2 sent to him that depicted Victim 2 inappropriately touching Victim 3.  McKnight identified Victim 3, by her first name that has the first initial "M", who he believed was approximately 7-8 years old, and stated that Victim 3 is Victim 2's sister. McKnight stated that he did not instruct Victim 2 to send him sexually explicit photos of Victim 3.

55. Your Affiant knows from his training and experience, as well as conversations with other investigators, instructors, and prosecutors who handle child pornography investigations that suspects that view, download, and/or transmit child pornography tend to keep this material for long periods of time. Individuals engaged in this type of conduct also do it on a continuing basis and it is rare for them to ever stop completely.

## INDIVIDUALS POSSESSING CHILD PORNOGRAPHY

56. Persons who are involved with child pornography often have other sexually explicit materials related to their interest in children, which may consist of photographs,

motion pictures, videos, text material, computer graphics and digital or other images of children. Such persons may also have images of children or text writing that do not rise to the level of child pornography but nonetheless fuel their deviant sexual fantasies involving minors. Such persons have been known to take and maintain photographs and video recordings of fully clothed children, not just in sexually provocative poses, but in public places and elsewhere.

57. Individuals who maintain images of children as described above, and child pornography, often maintain these images on cameras, film, video cameras, videos, computers, and other photographic equipment. Such individuals have been known to connect their cameras, video cameras, and other photographic equipment to their computers in an effort to create added storage space for their images of children. Additionally, some computers (including, for example, cellular telephones and tablets) have photographic capabilities themselves.

58. Individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica. They do this to gain status, trust, acceptance, and support and to increase their collection of illicit images and child erotica. The different Internet-based vehicles used by such individuals to communicate with each other include P2P, chat and file sharing programs, e-mail, e-mail groups, bulletin boards, Internet Relay Chat ("IRC"), newsgroups, Internet clubs, and various forms of Instant Messaging such as Yahoo! Messaging, and "chat" that is sometimes saved on the users' computers.

59. Individuals who collect child pornography often collect, read, copy or maintain names, addresses, including e-mail addresses, phone numbers, and lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests, or have child pornography and child erotica for sale or trade. These contacts are maintained for personal referral, exchange or, sometimes, commercial profit. They may maintain these names on computers, web sites or other Internet addresses,

and their discovery can serve as leads to assist law enforcement in proving the instant case and in apprehending others involved in the underground trafficking of child pornography.

## EVIDENCE TO BE COLLECTED

60. In my training and experience, I have learned that digital evidence is not limited to computers.  I have participated in investigations where persons with an interest in material depicting the sexual exploitation of children can access the Internet, display images of child pornography, and communicate with other individuals with the same interest using digital storage devices to include cellular telephones, email devices, and personal digital assistants.   These devices are frequently found to contain chat communications in the form of short message service (SMS) messages as well as enabling Internet and digital cellular network access.

61. In my training and experience, I have learned that the complete contents of online accounts may be important to establishing the actual user who has dominion and control of an online account at a given time.  Online accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider.  They may also be used by multiple people.  Therefore, the content of a given account, including the online accounts that send messages to a given account often provides important evidence regarding the actual user's dominion and control of an online account.

62. In my training and experience, I have learned that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of email conversations to determine their true meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved.  In the electronic world, it is even possible to use pictures, images and emoticons or emojis (images used to express a concept or idea, such as a happy face inserted into the content of an email or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren ":)" to convey a smile or agreement) to discuss

17

matters.  Keyword searches would not account for any of these possibilities, so actual review of the contents of an online account by law enforcement familiar with the identified criminal activity is necessary to find all relevant evidence within the account.

63. I recognize the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. It would be impractical and infeasible for the Government to review records produced by the Communication Account Provider and keep only such records as the Government finds to be related to the offenses described herein and in Attachment B during a single analysis.

64. In my training and experience, I have learned that various emails often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole.  In other words, the weight of each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole.  Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually and not in sum.  Due to the interrelation and correlation between email threads, and any respective attachments, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original.

65. In the past, I have reviewed activity within online accounts pursuant to search warrants in the course of ongoing criminal investigations.  In my training and experience, I have learned that multiple reviews of the activity in the account at different times is necessary to understand the full value of the information contained therein.  In order to obtain the full picture and meaning of the data from the information sought in Attachment A and Attachment B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the emails

and data must be assessed within the full scope of the investigation.  As such, I respectfully request the ability to maintain the whole of the data provided by the Communication Account Provider, and to review the communications in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time. As with all evidence, the Government will obtain the mirrored images in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

66. This application seeks a warrant to search all responsive records and information under the control of Facebook, Inc., a provider subject to the jurisdiction of this court, regardless of where Facebook, Inc. has chosen to store such information.  The Government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Facebook, Inc.'s possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

### CONCLUSION

67. Based on the foregoing, there is probable cause to believe that information associated with **THE SUBJECT INSTAGRAM ACCOUNTS**, described in Attachment A, constitutes/contains the fruits, evidence, instrumentalities and contraband of 18 U.S.C. § 2422(b) Enticement of a Minor, 18 U.S.C. § 2251(a) Production of Child Pornography, and 18 U.S.C. § 2252(a)(4)(B) Possession of Child Pornography, described herein and in Attachment B.

68. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United

States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

69. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

70. Therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B for **THE SUBJECT INSTAGRAM ACCOUNTS**, described in Attachment A.

Respectfully submitted,

SEAN P
MCCARTHY

Digitally signed by SEAN P
MCCARTHY
Date: 2021.10.29 09:20:52
-07'00'

Sean McCarthy
Special Agent
Homeland Security Investigations

Subscribed and sworn electronically this _____ of October 2021

Camille D.
Bibles

Digitally signed by Camille D.
Bibles
Date: 2021.10.29 14:20:20
-07'00'

HONORABLE JUDGE Camille D. Bibles
United States Magistrate Judge